**\*\*\*\*EXECUTIONS SCHEDULED FOR APRIL 17, 20, 24, and 27, 2017\*\*\*\***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| JASON McGEHEE, STACEY JOHNSON, | ) | |
| BRUCE WARD, TERRICK NOONER, | ) | |
| JACK JONES, MARCEL WILLIAMS, | ) | |
| KENNETH WILLIAMS, DON DAVIS, | ) | |
| and LEDELL LEE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number  4:17-CV-00179 |
| | ) | |
| ASA HUTCHINSON, Governor of the | ) | |
| State of Arkansas, in his official capacity, and | ) | |
| WENDY KELLEY, Director, Arkansas | ) | |
| Department of Correction, | ) | |
| in her official capacity, | ) | |
| Defendants. | ) | |

## PLAINTIFFS' INTERROGATORIES TO DEFENDANTS

Pursuant to Fed. R. Civ. P. 33, Plaintiffs propound the following interrogatories to Defendants Asa Hutchinson and Wendy Kelley, to be answered under oath and returned by April 7, 2017, or before any preliminary-injunction hearing if sooner, to the offices of the Federal Public Defender, 1401 W. Capitol Suite 490, Little Rock, Arkansas, 72201.

1

**INSTRUCTIONS**

1.      Each interrogatory hereinafter set forth not only calls for your knowledge, but also for knowledge that is available to you by reasonable inquiry, including inquiry of your representatives, agents, and investigators.  If you cannot answer the following interrogatories in full and complete detail after exercising due diligence to secure the information to do so, please so state and answer to the extent possible, specifying in each instance your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

2.      In answering these interrogatories, you are requested to answer each interrogatory fully, completely, and separately.  You are hereby notified that upon acquiring any information responsive to these interrogatories after the service of your initial answers, you will be required to serve supplemental answers containing such later-acquired information; and that you may be precluded at the trial of this action from introducing evidence relating to the subject matter of these interrogatories which you have not disclosed by these answers or by supplemental answers thereto.

3.      If you object to any interrogatory as inquiring into privileged matter, please set forth fully in your objection the facts upon which you base your objection and the nature of the privilege asserted.  Please answer the interrogatory to the extent that it calls for information on which you do not claim a privilege.  For each item of

2

information as to which you claim privilege, provide a privilege log.

4.      If for reasons other than a claim of privilege, you refuse to answer any interrogatory, state the grounds upon which the refusal is based with sufficient specificity to permit a determination of the propriety of such refusal.

5.      If any refusal to answer an interrogatory in whole or in part is based on a need to maintain confidentiality pursuant to Ark. Code Ann. § 5-4-617(i), state whether the information could be disclosed in whole or in part upon entry of a protective order in this litigation as contemplated by Ark. Code Ann. § 5-4-617(i)(3), and otherwise answer the interrogatory as completely as possible.  State whether and when you plan to apply for a protective order in this Court and whether the attached protective order proposed by Plaintiffs is sufficient for each particular concern or, if not, what edits are believed to be necessary to facilitate disclosure.

## DEFINITIONS

1.      "Document(s)" refers to any "communication," as well as any other information of any kind, that is (in whole or in part) manifested in, or can be converted to, tangible or digital form, including but not limited to letters, rough notes, memoranda, emails, SMS messages or other forms of text messages, word-processing documents, .pdf files, images, audio recordings, video recordings, saved or printed web pages, administrative directives, order forms, invoices, receipts, and packing slips.  For

3

purposes of this request, any Document which contains any note, comment, addition, deletion, insertion, annotation, or otherwise comprises a non-identical copy of another Document shall be treated as a separate Document.  In all cases where original and any non-identical copies are not available, "Document" also means any identical copies of the original and all non-identical copies thereof.

2.    "Communication" or "communications" refers to any exchange of information of any kind between two persons or entities in any form, including but not limited to letters, memoranda, administrative directives, telephone calls, face-to-face conversations, emails, SMS messages or other forms of text messages, order forms, invoices, receipts, and packing slips.

3.    "Identify" when used in reference to a document means to state the title, date, author(s), addressee(s), recipient(s), contents and present location and custodian of the document, or alternatively, if the document is produced to Plaintiffs in this case, to state the document production number.

4.    "Identify" when used in reference to a natural person means to state that person's full name, job title, present and last known address and telephone number.

5.    "State the Qualifications of": As used in the interrogatories below, the phrase "state the qualifications of" calls for the Defendants to describe with particularity the following matters with respect to any person falling within the

4

description of the interrogatory: (1) all degrees claimed and dates received, (2) all current licenses held and dates acquired, (3) all expired licenses once held and dates held, (4) all certifications held and dates acquired, (5) all expired certifications once held and date of expiration, (6) all work experience that was relied upon by the Defendants in selecting the person or may be relied upon by the Defendants in defending their selection of the person and the dates of that experience, (7) all training that was relied upon by the Defendants or may be relied upon by the Defendants in defending their selection of the person and the dates of that training, (8) all licenses, certifications, work experience, or training that the person intends to acquire prior to any execution and dates of expected licensure, certification, experience, or training, (9) the results of any background checks, and (10) any prior experience on an execution team.

6.      The words "You," "Your," and "the ADC" refer to Defendant Wendy Kelley, and any and all employees, agents, contractors, and consultants of the Arkansas Department of Correction in regard to those interrogatories requesting a response from Defendant Kelley.

The words "You" and "Your" refer to Defendant Asa Hutchinson, and any and all employees, agents, contractors, and consultants of the Governor's Office in regard to those interrogatories requesting a response from Defendant Hutchinson.

7.      "In the possession or control of the ADC" refers to any information that is

5

accessible to any employee of, attorney for, or other agent of the ADC or that is accessible to the compounding pharmacy or other drug supplier who has supplied or will be supplying drugs for the ADC to use in execution procedures.  This phrase also refers to information that was once readily available to the ADC, has been deleted or destroyed, but could be recovered through forensic analysis of ADC computer systems or portable electronic devices of ADC employees or agents.

8.    "Any branch of the State Government" means any member of the General Assembly, the Governor's office, or the state courts or any staff member or agent of the General Assembly, the Governor's office, or the state courts.

9.    "Chain of custody" calls for you to identify the original date and source of an item (i.e. the time and place of production and the identity of the producer); all locations to which the item was moved subsequent to its production, the dates of the moves, and the reasons for the moves; all container(s) in which the item was stored or moved and the dates in which the item was in such container(s); the conditions (including temperature, security, and sterility or lack thereof) under which the item was kept at each location and during each move; and all persons who had access to the item at any location or during any move.

10.    Any verb given in the past, present, or future form shall be construed as referring to the past, present, and the future to the extent that doing so would result in

6

the production of more information.

11.    The singular shall be construed to include the plural and the plural shall be construed to include the singular as required by the context to elicit all information discoverable within the broadest scope of these interrogatories.

12.    "And" and "or" have both conjunctive and disjunctive meanings as required by the context to elicit all information discoverable within the broadest scope of these interrogatories.

13.    "Any" and "all" shall mean "each and every."

14.    "Procedure" or "Execution Procedure" means the Defendants' or the State of Arkansas's or the Department of Correction's policies, procedures, instructions, steps to be undertaken, guidelines, recommendations, suggestions, regulations, and customary practices relating to the preparation for, rehearsal for, conduct of, practice for, or execution of condemned inmates by lethal injection, whether or not memorialized or formalized in any document.

7

## INTERROGATORIES TO DEFENDANT WENDY KELLEY

**Interrogatory No. 1**: Identify[1] and state the qualifications of all persons who will be involved in the implementation of the current execution procedure *as to each scheduled execution*,[2] including but not limited to (a) all designees of Director Kelley or Deputy Director for Health and Correctional Programs, (b) the executioners listed in Section I.4 of Attachment C, (c) all members of the IV team, (d) all persons who will be involved in mixing or reconstituting the lethal injection chemicals, (e) the person or people described by Attachment C, Section II.8, as the "trained, educated, and experienced person(s)" who will establish IV access if the IV team fails, (f) Director Kelley, (g) the Deputy Director for Health and Correctional Programs, (h) the warden of the Cummins Unit, (i) and any persons who may be involved in treating the inmate in the event that the execution procedure fails to have its intended effect.  Note, in particular, any recent experience relevant to the role the person will be performing in the execution process.

---

[1] To the extent that Defendants claim that any identifying information is confidential, Defendants should identify all information that is not confidential, including but not limited to a description of the given person's role in the execution procedure (*i.e.*, IV team member, executioner, tie-down team member, etc.).

[2] Defendants should clearly indicate whether the composition of the execution team will change as to each execution.

8

**Interrogatory No. 2**: Describe in detail the training and/or orientation and/or similar process *for each execution* for each person involved in the execution procedure, including but not limited to:  (a) all designees of the Directory Kelley or Deputy Director for Health and Correctional Programs, (b) the executioners, (c) all members of the IV team, (d) all persons who will be involved in mixing or reconstituting the lethal injection chemicals, (e) the person or people described by Attachment C as the "trained, educated, and experienced person(s)" who will establish IV access if the IV team fails, (f) Director Kelley, (g) the Deputy Director for Health and Correctional Programs, (h) the warden of the Cummins Unit, (i) any persons who may be involved in treating the inmate in the event that the execution procedure fails to have its intended effect, and (j) any other persons identified in Interrogatory #1

**Interrogatory No. 3**: State whether the ADC's Administrative Directive Re Procedure for Execution has been updated since May 22, 2008.  If so, state when the updates were made and describe the changes.

**Interrogatory No. 4:**  Describe each step of the execution procedure, starting 48 hours before the first injection or starting with the drug preparation (whichever occurs earlier), including, but not limited to:

(a) Preparation of the drugs or chemicals and the concentrations used of each

drug, including how long in advance of the execution the "mixing or

9

reconstitution of the chemicals" will occur as described in Section I.2 of

Attachment C;

(b) labeling of the syringes;

(c) the storage of the drugs between preparation and administration;

(d) the method for assessing the inmate's veins and choosing a vein or veins to be

used, including analysis of where on the body the veins could be accessed,

how the vein could be accessed, and what equipment or tools would be

needed for access at any particular point;

(e) the process for achieving access to the inmate's veins, including any process

for achieving access if initial attempts fail, and any limitations on the process

(and who makes the determination of when any limits have been reached);

(f) the process for pushing the drugs into the inmate's veins;

(g) any monitoring of the IVs and/or the inmate's veins during the execution;

(h) any monitoring of heart rate or other vital signs;

(i) each order given during the execution, and by whom; and

(j) each customary communication between execution team members.

10

**Interrogatory No. 5:**  Describe the minimum qualifications and expertise required of any and all individuals who are given the responsibility and/or discretion to order the execution staff to divert from the established lethal injection procedures if necessary to avoid inflicting severe and unnecessary pain and suffering on the condemned prisoner and the criteria that shall be used in exercising this discretion.

**Interrogatory No. 6:**  Explain how the Deputy Director or designee will "confirm the condemned inmate is unconscious" as provided in section IV.2.f of Attachment C.

(a) Describe in detail the meaning of "unconscious" as understood by the Deputy Director or designee in this context and what signs might indicate consciousness at any point in the procedure.

(b) State what "all necessary and medically-appropriate methods" means in the context of section IV.2.f of Attachment C.

(c) State whether you provide for monitoring of anesthetic depth as opposed to consciousness.

(d) State whether monitoring for "consciousness" continues throughout the entirety of the lethal-injection procedure.

(e) State whether and what equipment will be used in determining or monitoring "consciousness."

(f) Explain by what means the monitoring is conducted, who conducts the

11

monitoring, and the specific qualifications of the person(s) who conduct the monitoring.

**Interrogatory No. 7**: Describe in detail all safeguards, possible deviations, and contingency plans of the Execution Procedure:

(a) Detail and explain the malfunctions or problems that can occur or have occurred during an execution by lethal injection;

(b) Explain the steps that will be or have been taken to identify or recognize such problems;

(c) Explain how the execution procedure has been or will be modified in the event of malfunctions or problems during the lethal injection;

(d) Describe all past deviations—intended or unintended, anticipated or unanticipated, deliberate or accidental—from past lethal injection protocols in the State of Arkansas;

(e) Detail any plans to use resuscitation measures, if necessary;

(f) Specifically explain the contingency plans in place in the event an inmate remains conscious after administration of four syringes of midazolam, regains consciousness at any time during administration or vecuronium bromide or potassium chloride, and/or remains alive after administration of all lethal-injection drugs prepared for the inmate, including but not limited to

12

when and how efforts would be made at resuscitation, and at whose direction.

**Interrogatory No. 8**: Describe all the methods by which the "trained, educated, and experienced person(s)" mentioned in Attachment C may attempt to secure IV access if the members of the IV team fail to secure peripheral IV access, including but not limited to any version of a venous cutdown, placement of a central line, or any version of intraosseous infusion procedure.

**Interrogatory No. 9**: Describe in detail how the ADC will document each step of the execution procedure, and who will be responsible for such documentation, including but not limited to any documentation regarding the storage of the lethal-injection drugs prior to the execution, the documentation and/or memorialization of the preparation time of the lethal-injection drugs, the person responsible for preparing the lethal-injection drugs, any and all attempts at securing venous access, the start and finish times of the administration of each lethal injection drug, any observations of the condemned inmate prior to and during the procedure, the amount of time for the lethal-injection drugs to effect death after administration, and the disposal of the lethal-injection drugs and any backup dosages post-execution.

**Interrogatory No. 10:** Describe in detail the process by which the execution procedure is reviewed and assessed following and prior to each execution, including

13

who participates in the process, who is consulted, whether or not employees of the ADC are allowed to make input, and how revisions or modifications are proposed and adopted.

**Interrogatory No. 11**: Describe in detail the counseling services, rest opportunities, or other accommodations that are or will be made available to participants in the execution procedure and the process by which any participant may opt out of participating in any execution.

**Interrogatory No. 12:** Detail all communications with any branch of state government, and any internal documents, regarding execution scheduling:

(a)  Identify any agent of the ADC (including members of the Attorney General's office) who has engaged in any communication with any branch of the State Government, including the Governor or any employees or agents of his office, regarding the setting of the execution schedule in both 2015 and the currently set schedule (including, but not limited to, the effect of the present execution schedule on ADC employees and contractors and communications concerning the ADC's ability to successfully conduct eight executions on this timetable).

(b) State the date of, identify the participants in, and summarize the contents of, any communication within the scope of Interrogatory 12(a).

14

**Interrogatory No. 13:** Detail all available information about any lethal injection drugs in the ADC's possession:

(a) Disclose the trade names, generic names, batch numbers, lot numbers, quantities, concentrations, expiration dates, National Drug Code numbers, and dosages of all drugs listed in Ark. Code Ann. 5-4-617(c) that are or will be in the possession or control of the ADC;

(b) State whether and when any drugs listed in Ark. Code Ann. 5-4-617(c) in the possession or control of the ADC were or will be subjected to any testing, including testing for efficacy and purity, and provide identifying information for the person/entity that performed or will perform the testing;

(c) Identify the supplier(s) of any drugs listed in Ark. Code Ann. 5-4-617(c) that are or will be in the ADC's possession or control on the scheduled execution dates and/or are intended to be used in the execution of any Plaintiff;

(d) Detail the chain of custody (as previously defined) for all drugs listed in Ark. Code Ann. 5-4-617(c) that are or will be in the possession or control of the ADC at the time of any scheduled execution;

(e) Explain why the particular drugs that are or will be in the possession or control of the ADC at the time of any scheduled execution (and why the particular concentrations, dosages, and sources of those drugs) were chosen

15

for use in the Execution Procedure and describe what alternatives the ADC considered and why these alternatives were rejected.

**Interrogatory No. 14**: Disclose all Communications by the ADC or any of its agents with potential drug suppliers from January 1, 2015, to the present:

(a) Identify any agent of the ADC (including members of the Attorney General's office) who has engaged in any communication with any "manufacturer," "facility," "compounding pharmacy," or other supplier (Section 2(d) of Act 1096) about supplying lethal injection drugs from January 1, 2015, to the present, regardless of whether the ADC has contracted with, will contract with, has purchased from, or will purchase from the supplier.

(b) Identify the participants in, and summarize the contents of, any communication with the scope of Interrogatory 14(a).

**Interrogatory No. 15**: Describe in detail any policies or anticipated practices regarding the ability of counsel to view the execution of a client or clients and the ability of counsel to access a phone during the execution, including what arrangements have been or will be made to ensure that counsel have immediate access to a phone while viewing the execution, in the event communication with appropriate authorities becomes necessary. Give any and all reasons for any limitations imposed on counsel's ability to view the execution and simultaneously communicate with appropriate

16

authorities.

**Interrogatory No. 16**: Describe in detail any policies or anticipated practices regarding witnesses to the execution procedure:

(a) State the policy or anticipated practice regarding what portion or portions of the execution procedure witnesses will be allowed to view and hear.  Give any and all reasons for why witnesses will not be allowed to view and/or hear any part of the execution procedure.

(b) Describe in detail any policies or anticipated practices regarding how the Director or any other person with authority would make a decision to close the blinds between the execution room and the witness viewing room, or otherwise obstruct the view of the execution procedure.

### INTERROGATORIES TO DEFENDANT ASA HUTCHINSON

**Interrogatory No. 1**: Disclose all Communications by you, your office, or any of its agents regarding execution scheduling from January 2015 to the present:

(a) Identify any agent of your office (including yourself or members of the Attorney General's office) who has engaged in any communication with any branch of the State Government and/or with the ADC or any of its employees

17

or agents regarding the setting of the execution schedule in both 2015 and the currently set schedule;

(b) State the date of, provide identifying information for the participants in, and summarize the contents of, any communication within the scope of Interrogatory 1(a).

**Interrogatory No. 2**: List all sources of information and documents that you considered in determining dates for executions in both 2015 and for the currently scheduled executions.

**Interrogatory No. 3**: Describe in detail your reasons for setting the current execution schedule, and state when the dates were chosen.  Describe whether alternatives dates were considered and, if so, why they were not implemented.

**Interrogatory No. 4**: List and describe what measures you have taken to be available in the event an execution does not go according to plan and results in unconstitutionally cruel and unusual punishment.

**Interrogatory No. 5**: Describe in detail assessment measures you or your office intend to implement after each scheduled execution, if any.

18