# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

Jason McGehee, Stacey Johnson,
Bruce Ward, Terrick Nooner,
Jack Jones, Marcel Williams,
Kenneth Williams, Don Davis,
and Ledell Lee                                                                    Plaintiffs

v.                        Case No. 4:17-cv-179-KGB

Asa Hutchinson, Governor of the State of Arkansas,
in his official capacity, and Wendy Kelley, Director,
Arkansas Department of Correction,
in her official capacity                                                          Defendants

---

### *Amicus* Brief of Fresenius Kabi USA, LLC, and West-Ward Pharmaceuticals Corp.

---

Fresenius Kabi USA, LLC, and West-Ward Pharmaceuticals Corp. (the Manufacturers), for their *amicus* brief, state:

The Manufacturers recently learned of information suggesting that medicines they manufactured might be used in lethal injections in Arkansas. The use of their medicines for lethal injections violates contractual supply-chain controls that the Manufacturers have implemented. It also creates a public-health risk because it could result in the denial of medicines from patients who need them most.

## 1. The use of the medicines for lethal injections violates contractual supply-chain controls.

In recent years, more than 30 U.S. and international pharmaceutical companies, including the Manufacturers, have instituted supply-chain controls to prevent the sale of their medicines for use in capital punishment. Ty Alper, *Why the execution drug shortage won't go away*, Los Angeles Times, April 13, 2015, *available at* http://www.latimes.com/nation/la-oe-alper-lethal-injection-shortages-20150414-story.html (last visited on April 13, 2017). For example, the Manufacturers sell only to wholesalers and distributers who agree to resell only to acute-care hospitals, clinics, and healthcare facilities where the medicine's use is medically necessary within those facilities. The Manufacturers also instruct wholesalers and distributors (1) to reject sales or delivery of medicines such as those here to any correctional facilities and (2) to exclude delivery (directly or indirectly) other than to own-use customers, including other wholesalers and distributors and retail pharmacies, to reduce the possibility of the medicine reaching correctional facilities.

The Manufacturers have legitimate interests in implementing these controls. The use of the medicines in lethal injections runs counter to the Manufacturers' mission to save and enhance patients' lives, and

2

carries with it not only a public-health risk, but also reputational, fiscal, and legal risks. The Manufacturers therefore renegotiated contracts, remodeled distribution networks, and instituted supply-chain controls to prevent the use of the medicines in lethal injections.

It appears that these controls have been bypassed. The Manufacturers' records indicate no direct or indirect sales of the medicines to the Arkansas Department of Correction. The only conclusion is that these medicines were acquired from an unauthorized seller in violation of important contractual terms that the Manufacturers relied on when selling the medicines.

**2. Using the medicines for lethal injections poses a public-health risk.**

More significantly, the use of the medicines for lethal injections creates a public-health risk by undermining the safety and supply of lifesaving medicines. Improperly procured medicines from unauthorized sellers are at risk of adulteration or chemical change due to improper handling, for example, the failure to maintain proper temperature levels during storage and transport.

Diverting the medicines to the Department and away from healthcare providers could also create unnecessary shortages for patients who need them most. When the medicines could be used to protect life,

they are instead being used to end it. The unintended consequence could be to undermine the supply and to place patients in Arkansas and across the country at risk.

Yet another public-health factor is European Union regulation 1352/2011, which prevents trade in products that could be used for capital punishment or torture. The regulation has already reduced the supply to patients and physicians of medicines that have been used in the past in lethal-injection programs. Arkansas's plan to administer capital punishment using these medicines could similarly decrease the supply in the future.

Although *amici curiae* take no position on the merits of capital punishment, they ask the Court (1) to consider their unique knowledge and perspective on the public-health risks of using these medicines as part of a lethal-injection program and (2) to prohibit the Arkansas Department of Correction from using the Manufacturers' medicines for capital punishment.

Respectfully submitted,

BRETT D. WATSON,
ATTORNEY AT LAW, PLLC
P.O. Box 707
Searcy, Arkansas 72145-0707
(501) 281-2468
watson@bdwpllc.com

By: __/s/ Brett D. Watson_____
     Brett D. Watson
     Ark. Bar No. 2002182

**Certificate of Service**

A copy of the foregoing has been electronically filed and notice of filing has been sent to all counsel of record on April 13, 2017, via the CM/ECF system.

 _/s/ Brett D. Watson_____
     Brett D. Watson