## AFFIDAVIT OF WENDY KELLEY

I, Wendy Kelley, am competent to testify and have personal knowledge regarding the statements contained in this affidavit, and do hereby state and verify the following:

1. I am the Director of the Arkansas Department of Correction and am responsible for obtaining drugs for use in lethal-injection executions and otherwise for carrying out the sentence of death. I have been employed by the ADC since February 2006 and am a licensed attorney.

2. I personally oversaw and was present in the death chamber during the execution of Ledell Lee on April 20, 2017, the executions of Jack Jones and Marcel Williams on April 24, 2017, and the execution of Kenneth Williams on April 27, 2017.

3. Each of these executions was conducted pursuant to Arkansas law and ADC policy and with the goal of minimizing any risk of pain inherent in judicial executions.

4. ADC followed all of the policies and procedures set forth in its Lethal Injection Procedure (revised Aug. 6, 2015). And the condemned inmates continued to receive necessary and appropriate medical care until they expired.

5. The IV team and/or executioner successfully placed two patent intravenous infusion sites in each condemned inmate.



6. Throughout the lethal-injection process, two medical professionals monitored the inmates for signs of consciousness and monitored the IV infusion sites for any signs of infiltrate or other problems.

7. We did not experience any complications or problems with any of these executions, and the drugs worked as intended.

8. Ledell Lee's execution on April 20, 2017, was completely uneventful and proceeded exactly as planned pursuant to protocol. The IVs were placed pursuant to procedure. The chemicals were administered at 11:45 p.m. After the administration of the 500 mg dose of midazolam, Mr. Lee snored, breathed including one deep breath, relaxed his hands, and fell unconscious. He appeared to simply fall into a deep sleep. A thorough consciousness check was performed five minutes after the administration of the midazolam. That included calling his name, brushing his eyelashes, touching his corneas, rubbing his sternum, and shaking him. Mr. Lee exhibited no signs of consciousness. The designee then informed the executioner that he could continue with the second and third drugs. Mr. Lee was administered all three of the lethal-injection medications according to ADC policy and protocol. The absence of respiration and pulse was assessed at 11:54 p.m., and Warden Straughn then summoned the coroner. The coroner pronounced Mr. Lee's death at 11:56 p.m.

9. Inmate Jack Jones was under the influence of two narcotics during his execution on April 24, 2017. He requested his evening dose of methadone several hours early, and staff provided that medication to Mr. Jones at his request prior to

ADC 1458

attempting to place a central line. After receiving his methadone, and at his request after being informed about the benefits and risks of the procedure and signing a consent form, a medical doctor attempted to place a central line in Mr. Jones's neck. That effort was unsuccessful.

10. Mr. Jones was offered the opportunity to return to his cell at that time, but he declined and requested that the IV team member present go ahead and place the IVs. Mr. Jones requested and received a dose of diazepam prior to the IV placement by the IV team. Two IVs were placed according to protocol. Mr. Jones then asked for more diazepam, and I worked with medical staff to get a prescription for a second dose ordered and filled. At his request, Mr. Jones received a second dose of diazepam after the IVs were placed.

11. Mr. Jones was under the influence of these narcotic medications during the lethal injection. He was loose and rambling after I requested his last words, and he made some comments to one of his victims (who was a witness) that were inappropriate. At that time, I touched Mr. Jones's left hand twice to indicate that was enough and instructed my staff to announce we were proceeding and to turn off the microphone. The execution then proceeded pursuant to protocol.

12. The chemicals were administered at 7:06 p.m. During the administration of the 500 mg dose of midazolam, Mr. Jones apologized to me and to the executioner. He said, "Wendy, you know how I feel about you." And to the executioner, "I'm sorry; no man should ever have to do this." Mr. Jones was snoring and appeared to me to be completely unconscious two minutes after the midazolam

ADC 1459

administration had begun. He was snoring loudly and never gasped for air, contrary to media reports.

13. In response to testimony of Dr. Joel Zivot regarding Mr. Jones's risk of choking due to his alleged sleep apnea, at my instructions, the designee used a tongue depressor to ensure that Mr. Jones did not choke on his tongue. Mr. Jones was unconscious at that time. There was no response from him to the depressor, and he did not exhibit any signs of distress.

14. The drug protocol worked exactly as intended and expected. The designee performed a thorough consciousness check on Mr. Jones five minutes after the administration of the midazolam (the same as described above with regard to Mr. Lee). Mr. Jones did not respond to any of the stimuli. The executioner then continued with the administration of the second and third drugs. Mr. Jones was administered all three of the lethal-injection medications according to ADC policy and protocol. The absence of respiration and pulse was assessed at 7:18 p.m., and Warden Straughn then summoned the coroner. The coroner pronounced Mr. Jones's death at 7:20 p.m.

15. The execution of Marcel Williams on April 24, 2017, was also conducted pursuant to protocol, and the drugs worked as intended. The IV team successfully placed an IV in Mr. Williams's right arm but experienced some difficulty in placing a second IV line in Mr. Williams's left arm. I excused all people present except for one IV team member and requested assistance from the executioner. After removing Mr. Williams's wrist restraints and examining his

ADC 1460

hands, the executioner successfully and placed a small 42-gauge needle in Mr. Williams's right hand. After assessing that line for patency, the executioner chose to use that line for the administration of the lethal drugs. The designee and the executioner constantly monitored Mr. Williams's IV infusion site for any signs of infiltration or other problems, but none were detected. I know the executioner and the designee were communicating constantly during the administration of the lethal drugs.

16. The chemicals were administered at 10:16 p.m. Marcel Williams was unconscious within five minutes of the administration of 500 mg of midazolam. He breathed deeply, but he never struggled for breath, arched his back, or pulled against the restraints. In fact, both of his arms were very loosely restrained, and when his body completely relaxed, his right arm visibly relaxed resulting in his right hand turning slightly. I pointed this out to the designee who would be checking for consciousness in the next minute or two. The consciousness check was conducted according to policy. Mr. Williams was not responsive to any of the stimuli applied during the consciousness check, and the executioner proceeded to administer the second and third drugs. Mr. Williams was administered all three of the lethal-injection medications according to ADC policy and protocol. The absence of respiration and pulse was assessed at 10:31 p.m., and Warden Straughn then summoned the coroner. The coroner pronounced Mr. Williams's death at 10:33 p.m.

17. I have reviewed the Declaration of Jamie Giani regarding the execution of Marcel Williams. Some of the information stated in it is inaccurate. At

ADC 1461

no time did Mr. Williams's breathing amount to "jerky motions." At no time did Mr. Williams cough, arch his back, or grimace as if in pain. Mr. Williams did not turn his head. I did observe his right hand turn as a result of his arms relaxing once he was administered the midazolam. This movement was possible because the restraint was very loose to avoid disturbing the IV line. That was the only movement of his body, other than the rise and fall of his chest while breathing. I stood less than 5 feet from Mr. Williams during his execution. My view was not obstructed.

18. Kenneth Williams's execution on April 27, 2017, was also conducted pursuant to protocol, and the drugs worked as intended. The IVs were placed pursuant to procedure. Mr. Williams then gave a lengthy statement during which he apologized to his victims and spoke in tongues.

19. The chemicals were administered at 10:52 p.m. Kenneth Williams was still speaking in tongues during the administration of midazolam. After the midazolam began to take effect, Mr. Williams stopped speaking in tongues and said "these last words..." but then he stopped speaking mid-sentence. At 10:53 p.m., Mr. Williams was quiet. At 10:55 p.m., for about 10 seconds, Kenneth Williams's chest raised and lowered as through he was coughing but there was no "coughing" sound. During that 10 seconds, his hands and arms remained relaxed. I observed no indication of distress or pain.

20. Two minutes later at 10:57 p.m., a check for consciousness was completed pursuant to policy, and Mr. Williams did not respond to any of the

ADC 1462

stimuli applied. The designee then informed the executioner that he could continue with the second and third drugs. Kenneth Williams was administered all three of the lethal-injection medications according to ADC policy and protocol. The absence of respiration and pulse was assessed at 11:02 p.m., and Warden Straughn then summoned the coroner. The coroner pronounced Kenneth Williams's death at 11:05 p.m.

21. None of the inmates executed by the Arkansas Department of Correction using the midazolam protocol exhibited any signs of consciousness five minutes after the administration of the first drug.

22. None of the inmates executed by the Arkansas Department of Correction using the midazolam protocol exhibited any signs of severe pain or suffering during the lethal-injection procedure.

I declare under penalty of perjury under the laws of the United States of America and the State of Arkansas that the above information is true and correct to the best of my knowledge.

FURTHER AFFIANT SAYETH NOT.

*Wendy Kelley*

ADC 1463

## ACKNOWLEDGMENT

STATE OF ARKANSAS )
)
COUNTY OF JEFFERSON )

Subscribed and sworn to before me, a Notary Public, on this 11th day of May, 2017.

_____
Notary Public

My Commission Expires:

Feb. 2, 2019

ADC 1464