# IN THE UNITED STATES DISTRICT COURT
# EASTERN DIVISION OF ARKANSAS
# WESTERN DIVISION

**JASON MCGEHEE,** *et al*.                                              **PLAINTIFFS**

**v.**                          Case No. 4:17-cv-00179 KGB

**ASA HUTCHINSON,** *et al*.                                             **DEFENDANTS**

## ORDER

Before the Court are plaintiffs' motions *in limine* to exclude certain anticipated testimony of Dr. Daniel E. Buffington and Dr. Joseph Antognini (Dkt. Nos. 142, 143). Defendants responded in opposition to both motions (Dkt. Nos. 148, 149).

Plaintiffs move to exclude certain of Dr. Buffington and Dr. Antognini's anticipated testimony, arguing that these witnesses are not qualified to provide expert testimony on subject matter outside of their areas of expertise pursuant to Federal Rule of Evidence 702. For the first motion, plaintiffs assert that the Court should exclude certain anticipated testimony of Dr. Buffington, a pharmacist, because plaintiffs contend that he is not qualified to offer expert opinions on matters outside of his expertise, such as the pharmacological and anesthetic properties of midazolam, monitoring the depth of anesthesia during surgery, assessing anesthetized patients for signs of consciousness, and the correlation between movement and pain in anesthetized persons (Dkt. No. 142, at 1-2). For the second motion, plaintiffs assert that the Court should exclude certain anticipate testimony of Dr. Antognini, an anesthesiologist, because plaintiffs contend that he is not qualified to offer expert opinion on matters outside of his expertise, such as the level of pain involved in death by firing squad and the availability of the firing squad as an alternative method of execution (Dkt. No. 143, at 1-2).

In response to the first motion, defendants argue that Dr. Buffington is qualified to render reliable expert opinions in this case based on his training and experience as a Doctor of Pharmacy (Dkt. No. 148, at 2). Defendants also contend that Dr. Buffington's opinions are based on reliable facts and data because his opinions are supported by citations to peer-reviewed, published, scientific literature (*Id.*, at 10). In response to the second motion, defendants argue that Dr. Antognini is qualified to render reliable expert opinions as a medical doctor who is board certified in the field of anesthesiology (Dkt. No. 149, at 4). Defendants further assert that Dr. Antognini's opinions are based on sufficient facts and data (*Id.*, at 6). In their responses to both motions, defendants maintain that plaintiffs' arguments for excluding certain anticipated testimony of Dr. Buffington and Dr. Antognini go to the weight, and not the admissibility, of the testimony to be offered by these witnesses (Dkt. No. 148, at 1; 149, at 1-2).

Rule 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

- (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

- (b) the testimony is based on sufficient facts or data;

- (c) the testimony is the product of reliable principles and methods; and

- (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can

offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal quotations and citations omitted).

In determining whether expert testimony should be excluded or admitted, the district court must decide if the expert's testimony and methodology are reliable, are relevant, and can be applied reasonably to the facts of the case. *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012); *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function. *Watson*, 668 F.3d at 1015

To satisfy the reliability requirement for admission of expert testimony, the party offering the expert testimony must show by a preponderance of the evidence that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. *Barrett*, 606 F.3d at 980 (internal quotation marks and citation omitted). To satisfy the relevance requirement for the admission of expert testimony, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.*

The Court examines the following four non-exclusive factors when determining the reliability of an expert's opinion: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'" *Presley v. Lakewood Eng'g and Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 593-94). These factors are not exhaustive or limiting, and the Court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case. *Id.* In addition, the Court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed

3

expert sufficiently connected the proposed testimony with the facts of the case. *Id.* While weighing these factors, the Court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge. *Id.* Thus, speculative expert testimony with no basis in the evidence is inadmissible. *Weisgram v. Marley Co.*, 169 F.3d 514, 518-19 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000) (reversing a district court for allowing a witness who was qualified as a fire investigator "to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support").

This case is set for a bench trial before the Court on April 23, 2019. In the case *In re Zurn Pex Plumbing Products Liability Litigation*, the Eighth Circuit Court of Appeals analyzed the application of the *Daubert* standard when evidence is not presented to a jury but is instead presented at a bench trial:

> The district court's "gatekeeping function" under *Daubert* ensures that expert evidence "submitted to the *jury* " is sufficiently relevant and reliable, *Bonner v. ISP Technologies, Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (emphasis added), but "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself," *United States v.. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). Similar reasons support less stringent application of *Daubert* in bench trials. *See Charles Alan Wright, Victor James Gold*, 29 Fed. Prac. & Proc. Evid. § 6266, n.90.2 (2010), and cases cited. The "usual concerns of the [*Daubert*] rule—keeping unreliable expert testimony from the jury—are not present in such a setting." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 760 (7th Cir. 2010).

644 F.3d 604, 613 (8th Cir. 2011); *see also City of Lincoln, Neb. v. Windstream Nebraska, Inc.*, Case No. 4:10-cv-3030, 2011 WL 7145632, at *1 (D. Neb. Aug. 23, 2011) (applying the analysis from *In re Zurn Pex Plumbing* to *Daubert* motions in a bench trial context).

Having considered the motions and the governing law, at this time, the Court denies plaintiffs' motions *in limine* to exclude certain anticipated testimony of Dr. Buffington and Dr.

4

Antognini (Dkt. Nos. 142, 143). Because this is a bench trial, the Court is the finder of fact and concerns regarding *Daubert* are minimized. *See In re Zurn Pex Plumbing*, 644 F.3d at 613. The Court will allow the parties to develop fully the testimony of Dr. Buffington and Dr. Antognini at trial through direct and cross examination and will give their opinions the weight the Court deems appropriate in the exercise of its sound and considerable discretion.

It is so ordered, this the 12th day of April, 2019.

_____
Kristine G. Baker
United States District Court Judge