# IN THE UNITED STATES DISTRICT COURT
# EASTERN DIVISION OF ARKANSAS
# WESTERN DIVISION

**JASON MCGEHEE,** *et al*.                                                                            **PLAINTIFFS**

**v.**                               **Case No. 4:17-cv-00179 KGB**

**ASA HUTCHINSON,** *et al*.                                                                       **DEFENDANTS**

## ORDER

Before the Court is a motion for summary judgment filed by defendants Asa Hutchinson, who is sued in his official capacity as Governor of Arkansas, and Wendy Kelley, who is sued in her official capacity as Director of the Arkansas Department of Correction ("ADC") (Dkt. No. 144). Plaintiffs Stacey Johnson, Bruce Ward, Terrick Nooner, and Don Davis[1] responded in opposition to the motion (Dkt. No. 150), and defendants replied (Dkt. No. 160). The Court grants in part and denies in part defendants' motion.

### I.     Factual Background

Unless otherwise noted, the following facts are taken from defendants' statement of undisputed material facts and plaintiffs' statement of disputed material facts and response to defendants' statement of undisputed material facts (Dkt. Nos. 145, 151).

The parties agree that the ADC's current Lethal Injection Procedure utilizing the three-drug midazolam protocol became final on August 6, 2015 (Dkt. No. 151, ¶ 4). Arkansas carried

---

[1] On November 14, 2017, the parties jointly filed a notice of commutation, confirming that the Governor commuted Jason McGehee's sentence from death to life without parole thereby rendering the claims as to Mr. McGehee moot (Dkt. No. 100).
  Further, on May 22, 2018, the Court previously permitted Justin Anderson, Ray Dansby, Gregory Decay, Kenneth Isom, Alvin Jackson, Latavious Johnson, Timothy Kemp, Brandon Lacy, Zachariah Marcyniuk, Roderick Rankin, Andrew Sasser, Thomas Springs, and Mickey Thomas to intervene as plaintiffs in this matter (Dkt. No. 111).
  On June 21, 2018, plaintiffs and intervenors filed an amended complaint that is the operative complaint in this matter (Dkt. No. 117).

out four midazolam executions in April 2017. Ledell Lee was executed on April 20, 2017. Jack Jones and Marcel Williams were executed on April 24, 2017. Kenneth Williams was executed on April 27, 2017 (*Id.*, ¶ 40). Governor Hutchinson commuted the death sentence of plaintiff Jason McGehee, and the parties agree that Mr. McGehee's claims are moot (*Id.*, ¶ 48). As the Eighth Circuit Court of Appeals explained in April 2017, sevoflurane gas has "never been used to carry out an execution." (*Id.*, ¶ 70).

## II. Legal Standard

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Credibility determinations, weighing of evidence, and drawing inferences

from evidence are functions left for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

### III. Analysis

#### A. Eleventh Amendment

Defendants repeat almost verbatim the arguments made in a motion to dismiss for failure to state a claim filed by defendants on April 7, 2017 (Dkt. No. 26), to which plaintiffs responded in opposition on April 10, 2017 (Dkt. No. 31). The Court entered a written ruling granting in part and denying in part defendants' motion to dismiss (Dkt. No. 53). The arguments defendants now make with respect to the Eleventh Amendment are primarily legal arguments and essentially seek to have this Court reconsider its prior rulings. The Court sees no basis on which to reconsider its prior rulings with respect to these legal arguments in the light of the record evidence before the Court. Consistent with this Court's prior Order (Dkt. No. 53, at 8-10) and for the reasons set forth in this Order, defendants' motion for summary judgment on the basis of the Eleventh Amendment is denied.

#### B. Claims Of Plaintiff Jason McGehee

On November 14, 2017, the parties jointly filed a notice of commutation, confirming that Governor Hutchinson commuted Jason McGehee's sentence from death to life without parole thereby rendering the claims as to Mr. McGehee moot (Dkt. No. 100). Defendants request the entry of judgment as a matter of law in favor of defendants on all claims asserted by Mr. McGehee (Dkt. No. 146, at 31). The Court dismisses as moot Mr. McGehee's claims based on the parties joint filing (Dkt. No. 100).

### C. Eighth Amendment Claim – Midazolam Claim

#### 1. *Res Judicata* And Collateral Estoppel

In support of their request that the Court grant summary judgment in favor of defendants on plaintiffs' Eighth Amendment midazolam claim based on *res judicata* and collateral estoppel, defendants repeat almost verbatim the arguments made in a motion to dismiss for failure to state a claim filed by defendants on April 7, 2017 (Dkt. No. 26), to which plaintiffs responded in opposition on April 10, 2017 (Dkt. No. 31). The Court entered a written ruling granting in part and denying in part defendants' motion to dismiss (Dkt. No. 53). The arguments defendants now make with respect to *res judicata* and collateral estoppel's impact on plaintiffs' Eighth Amendment midazolam claim are primarily legal arguments and essentially seek to have this Court reconsider its prior rulings. The Court sees no basis on which to reconsider its prior rulings with respect to these legal arguments in the light of the record evidence before the Court. Consistent with this Court's prior Order (Dkt. No. 53, at 29-42), defendants' motion for summary judgment on plaintiffs' Eighth Amendment midazolam claim on the basis of *res judicata* and collateral estoppel is denied.

#### 2. Merits Of The Eighth Amendment Claim (Claim I)

Genuine issues of material fact are in dispute that preclude this Court from granting summary judgment in defendants' favor on plaintiffs' Eighth Amendment midazolam claim. There are genuine issues of material fact in dispute regarding whether the ADC's lethal injection protocol is sure or very likely to cause needless suffering. There are genuine issues of material fact in dispute regarding whether ADC has access to an alternative execution method that will significantly reduce a substantial risk of severe pain. On the record evidence before it, the Court

denies defendants' motion for summary judgment on plaintiffs' Eighth Amendment midazolam claim.

### D.  Equal Protection Claim – Consciousness Checks (Claim II)

Genuine issues of material fact are in dispute that preclude this Court from granting summary judgment in defendants' favor on plaintiffs' Equal Protection claim.  Based on the record evidence before it, the Court determines that there are genuine issues of material fact in dispute regarding whether the ADC carries out an appropriate consciousness check based upon observed past performance, whether the ADC applies the consciousness check consistently from execution to execution, and how the ADC proceeds even after the condemned inmate exhibits movements that may indicate consciousness.  On the record evidence before it, the Court denies defendants' motion for summary judgment on plaintiffs' Equal Protection claim as it relates to consciousness checks.

### E.  First Amendment Claim – Access To The Courts And Counsel (Claims III and IV)

At this time, the Court denies defendants' motion for summary judgment on plaintiffs' First Amendment Claim.

#### 1.  Statute Of Limitations

Defendants seek summary judgment on plaintiffs' access to the courts and counsel claims on the basis of a statute of limitations defense.  In support of this argument, defendants repeat almost verbatim the arguments made in a motion to dismiss for failure to state a claim filed by defendants on April 7, 2017 (Dkt. No. 26), to which plaintiffs responded in opposition on April 10, 2017 (Dkt. No. 31).  The Court entered a written ruling granting in part and denying in part defendants' motion to dismiss (Dkt. No. 53).  The arguments defendants now make with respect to the statute of limitations as applied to Claims III and IV of the amended complaint are primarily

legal arguments and essentially seek to have this Court reconsider its prior rulings. The Court sees no basis on which to reconsider its prior rulings with respect to these legal arguments in the light of the record evidence before the Court. In moving for summary judgment on Claims III and IV, at various points, defendants cite the 2008 policy, the modified protocol adopted in 2015, and the Joint Proposed Execution Viewing Policy agreed upon by the parties in April 2017 (Dkt. No. 146, at 64-68). Further, plaintiffs argue the facts and timing of intervenor Latavious Johnson's case (Dkt. No. 150, at 29). There are genuine issues of material fact in dispute with respect to the statute of limitations defense. Consistent with this Court's prior Order (Dkt. No. 53, at 53-55) and this Order, defendants' motion for summary judgment on the basis of the statute of limitations as applied to Claims III and IV is denied.

### 2. *Res Judicata* And Collateral Estoppel

To the extent defendants argue that *res judicata* and collateral estoppel should bar relitigation of the access to courts and counsel claims, the Court rejects the arguments. Under Arkansas law, *res judicata* is an affirmative defense that should be asserted when responding to a complaint. *Amos v. Amos*, 669 S.W.2d 200, 200-01 (Ark. 1983); *see* Ark. R. Civ. P. 8. Collateral estoppel is one of two facets of *res judicata*, under Arkansas law; the other is claim preclusion. *Morgan v. Turner*, 368 S.W.3d 888, 895 (Ark. 2010). As plaintiffs point out, defendants did not raise *res judicata* or collateral estoppel as to the access to the courts and counsel claims at the motion to dismiss stage (Dkt. No. 26). Further, defendants did not assert *res judicata* or collateral estoppel in response to plaintiffs' amended complaint (Dkt. No. 84, at 32-33).

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d

1009, 1013 (8th Cir. 2016) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). To the extent defendants argue that a previous decision from the Arkansas Supreme Court bars this action, the Court will analyze the issue under Arkansas law. *Zutz v. Nelson*, 601 F.3d 842, 847 (8th Cir. 2010). Under Arkansas law, plaintiffs' claims are barred by *res judicata* if: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) the first suit was fully contested in good faith; (4) both suits involve the same claim or cause of action; and (5) both suits involve the same parties or their privies." *Baptist Health v. Murphy*, 373 S.W.3d 269, 278 (Ark. 2010). "Where a case is based on the same events as the subject matter of a previous lawsuit, *res judicata* will apply even if the subsequent lawsuit raises new legal issues and seeks additional remedies." *Hardy v. Hardy*, 380 S.W.3d 354, 358 (Ark. 2011) (citing *Beebe v. Fountain Lake School Dist.*, 231 S.W.3d 628 (Ark. 2006)).

In the alternative, defendants argue that collateral estoppel, which is similar to the doctrine of *res judicata*, should apply to certain of plaintiffs' claims, including their midazolam claims. Under these circumstances, Arkansas law governs the question of collateral estoppel. *National Farmers Union Standard Ins. Co. v. Morgan*, 966 F.2d 1250, 1253 (8th Cir. 1992). Under Arkansas law, the four elements of collateral estoppel, or issue preclusion, are that: (1) the issue is the same as that involved in a prior litigation; (2) the issue was actually litigated; (3) the issue was determined by a valid and final judgment; and (4) the determination was essential to the judgment. *East Texas Motor Freight Lines v. Freeman*, 713 S.W.2d 456, 459 (1986).

Because *res judicata* is an affirmative defense, defendants have the burden of pleading and proving *res judicata* and collateral estoppel. In moving for summary judgment on Claims III and IV, at various points, defendants cite the 2008 policy, the modified protocol adopted in 2015, and the Joint Proposed Execution Viewing Policy agreed upon by the parties in April 2017 (Dkt. No.

146, at 64-68). There are genuine issues of material fact in dispute that preclude the Court from granting summary judgment on the basis of *res judicata* and collateral estoppel in favor of defendants on Claims III and IV. Defendants also acknowledge that in the prior cases cited in the parties' filings no viewing claims were actually litigated. Further, there are new material facts based on the record evidence before the Court developed since those prior cases were decided. As a result, these new material facts also provide a basis for this Court to review claims regarding access to the courts and counsel.

### 3. Alleged Speculative Nature Of Claims

Based on the record evidence before the Court, at this time, the Court declines to grant summary judgment in favor of defendants on plaintiffs' access to counsel and the courts claims based on defendants' argument that these claims are speculative. The Court understands this argument to challenge plaintiffs' standing to bring Claims III and IV. "Article III, § 2, of the Constitution restricts the federal 'judicial [p]ower' to the resolution of 'Cases' and 'Controversies.'" *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). Plaintiffs have the burden of establishing that they have standing. *Id.* To demonstrate that they have "Article III" standing, plaintiffs must demonstrate:

> (1) [A]n injury in fact (*i.e.,* a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.,* a "'fairly . . . trace[able]'" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is "'likely'" and not "merely 'speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Id.* at 273-74 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).

In addition to the three "irreducible constitutional minimum" requirements of Article III standing, *Lujan,* 504 U.S. at 560, courts weigh other "prudential" considerations in determining whether plaintiffs have standing. *United States v. Windsor*, 133 S. Ct. 2675, 2685 (2013)

(explaining the distinction between "the jurisdictional requirements of Article III and the prudential limits on its exercise").

The Court finds that plaintiffs have standing to bring Claims III and IV. The second and third elements of Article III standing are easily satisfied: the cause of the alleged injury is fairly traced to Governor Hutchinson and Director Kelly's decisions regarding the viewing policies, and plaintiffs' injury would be remedied by an Order from this Court granting an injunction that addresses the purported deficiencies in the viewing policies as alleged by plaintiffs. The Court also finds that plaintiffs can demonstrate the first element of a concrete and particularized invasion of a legally-protected interest. This is not a generalized grievance because the alleged harm is particular to the plaintiffs to be scheduled for execution, rather than harm "shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This also is not a case where plaintiffs are resting their "claim[s] to relief on the legal rights or interests of third parties." *Id.* While plaintiffs share the same alleged injury, they bring this action to seek to redress the alleged imminent injury that they each will suffer individually. The Court determines that plaintiffs have standing to bring these claims and that, based on the record evidence before the Court, all of the elements of standing have been satisfied in this case.

### 4. Merits Of Claims

The Court concludes, having reviewed the record evidence submitted by plaintiffs and defendants and having construed all reasonable inferences in favor of plaintiffs, that there are genuine issues of material fact in dispute that preclude granting summary judgment to defendants on Claims III and IV. In moving for summary judgment on Claims III and IV, at various points, defendants cite the 2008 policy, the modified protocol adopted in 2015, and the Joint Proposed Execution Viewing Policy agreed upon by the parties in April 2017 (Dkt. No. 146, at 64-68). There

are genuine issues of material fact in dispute. Further, plaintiffs assert that the Joint Proposed Execution Viewing Policy the parties negotiated for the executions in April 2017 was not clearly in effect for further executions, until defendants conceded in briefing that the Joint Proposed Execution Viewing Policy is "not limited in time or scope to only the executions that were scheduled to take place in April 2017" and that the policy will apply to "all executions." (Dkt. No. 146, at 68; Dkt. No. 150, at 27). At a minimum, the Court would like the parties to confirm on the record in open Court the intended scope and effect of the Joint Proposed Execution Viewing Policy, whether the parties followed the written Joint Proposed Execution Viewing Policy or modified it by practice or agreement in April 2017, what all parties mean when they refer to "all executions," and how the parties intend to conduct themselves going forward, given plaintiffs' and the intervenors' claims. Even if the Joint Proposed Execution Viewing Policy remains in effect for all future executions, plaintiffs raise genuine issues of material fact with respect to claims based on claimed rights for visual and auditory access to the entire execution process, including the affixation of the IV lines and the pushing of drugs. For all of these reasons, the Court denies defendants' motion for summary judgment on Claims III and IV.

**IV.     Conclusion**

For these reasons, the Court grants in part and denies in part defendants' motion for summary judgment.

So ordered this the 19th day of April, 2019.

_Kristine G. Baker_
Kristine G. Baker
United States District Judge

10